This cause was heretofore in the Court of Appeals, and is reported in 2 Washington’s Reports, p. 80. The statement of Mr. Washington will, for the most part, be pursued as far as it goes, and the circum-tances which have since attended the case, will be added. This case first came into the Court of Appeals as an appeal from the High Court of Chancery, in a suit instituted there by Richard Woods, the testator of the present appellee, against Philip M’Rae, the testator of the present appellants. The bill filed by Woods states that the complainant, in the year 1769, had a lottery, the highest prize in which was some improved lots in Charlottesville, and a tract of land, which property, in the scheme of the lottery was estimated at 4401. That Roderick M’Rae purchased two tickets, Henry Mullins one, to which the plaintiff added another, the whole forming a joint property in which Roderick M’Rae owned one-half. That one of the partnership tickets, No. 69, drew the highest prize, and was therefore entitled to the property above mentioned. But the ticket, so soon as its good fortune was known, was forcibly taken from the said Roderick M’Rae, by the defendant Philip M’Rae, who claimed the entire benefit of the prize. That the plaintiff and Mullins having sold their interest in the prize to Roderick M’Rae, the plaintiff conveyed the whole property to the assignee of Roderick. That about fifteen years after this, the defendant, Philip M’Rae, commenced a suit *against the plaintiff at law, and, in the absence of the plaintiff’s witnesses, who could have proved the tortious manner in which the plaintiff acquired the possession of the ticket, a verdict was rendered against him for 4511. 18s. 4d. damages, for the whole value of the ticket. The bill prays an injunction to the judgment at law.
The answer states that half the ticket in question was purchased by Roderick M’Rae, for the defendant, the day before the drawing, and that, after it was known to have been fortunate it was delivered to the defendant by the said Roderick. That the defendant never claimed more than one-half of the prize drawn by this ticket.
The evidence as to the right of Philip M’Rae, and the manner of his obtaining possession of the ticket, is extremely contradictory.
The subject of dispute was submitted to arbitration by the two M’Raes, as appears, by the testimony of some of the arbitrators, and a decision was given in favour of Philip M’Rae’s title to one half of Roderick’s interest in the prize. One of the jurymen who tried the cause, deposes that his intention was to give damages for the whole value of the ticket. Another juryman deposes that the Jury gave to the defendant, Philip M’Rae, damages for the interest which Roderick M’Rae held in the ticket. The declaration in the action at law, claimed the whole ticket, - and the verdict was general, ‘ ‘That the defendant did assume upon himself as the plaintiff hath declared against him and assessed the damages to 4511. 18s. 4d. ”
The Chancellor upon the hearing of this cause, directed the issue between the parties in the action at common law to be tried again; from which decree the defendant M’Rae appealed. In the Court of Appeals,, the decree of the Chancellor was affirmed. This decree being affirmed, the issue directed by it was tried in the Charlottes-ville District Court, and was found in favour of Woods. But the Judge having certified his dissatisfaction with the verdict, the Chancellor directed the issue to be tried again in the District Court at Richmond. On this trial the Jury found a verdict for Woods, and the Court certified that in their opinion the verdict was against evidence.
Upon the first trial of the issue, the deposition of Milly Oglesby, which was stated to operate strongly in favour of M’Rae, and was not before the Court of Appeals, was read. Additional evidence was adduced on both sides. The second issue was tried upon the evidence contained in the papers filed in the High Court of Chancery. The injunction obtained by Woods was decreed to be perpetual: from which decree the present appeal was taken.
Randolph, for the appellants. If this had been the case of a single trial, according to the precedents of a Court of Chancery, the cause ought to have been sent back, on the Judge’s expressing his dissatisfaction with the verdict, (a) What difference then does the second trial at common law make when the Judge, who presided, certifies that the verdict was contrary to evidence, and that there was no testimony in addition to that contained in the papers which came from the High Court of Chancery? A Court of Chancery may send out issues till the conscience of the Judge shall be satisfied; and the question is, whether it ought to be satisfied when the Judges of common law say thejr are dissatisfied. But the Chancellor, on the testimony of Milly Oglesby, ought to have decided in favour of M’Rae without directing a third issue. If that testimony had been before the Court of Appeals, the original verdict would not have been disturbed.
Wickham, for the appellee. The original verdict in favour of M’Rae was for the whole of a lottery ticket, when he was not entitled to more than one-fourth, if to any thing. Those Judges of the Court of Appeals, when the case was brought *245 up before, who gave any opinion as to the merits, did not think that M’Rae was entitled to more than one fourth; and if the verdict had been for one-fourth of the ticket, it is probable that they would not have been disposed to disturb it; but all the Judges were of opinion that a new trial ought to be granted. There was a great variety of contradictory evidence in the cause; and the additional testimony of Milly Oglesby was probably weighed by the Jury. When there is such contradic-torj' evidence, the Court ought with extreme caution to interfere. It would be no disparagement to the learning of the Judges to say, that cases of this kind emphatically belong to the decision of the Jury, who, knowing the characters of the witnesses, are better enabled to determine on the degree of credibility to which they are entitled, than the Judges possibly can be from merely hearing them give their evidence in Court.
A Court of Chancery will not grant a new trial on the mere certificate of the Judge, (a)
After the trial at Charlottesville M’Rae did not choose to trust to a Jury of the vici-nage, but brought his case to trial at Richmond, where a Jury of strangers concurred '"'with the Jury of the vic-inage. As to the power of a Court of Chancery to grant even five new trials, such a thing may exist, but it ought not to have been exerted in the present case. Under all the circumstances of this case, it would have been a mere mockery of the trial by Jury to have directed another issue.
Hay, in reply. There appear to have been three verdicts in this case; in one instance there was a verdict for M’Rae, and in two others, for Woods, both of which were in opposition to the opinions of the Judges. The scales were therefore equi-poised. The Judges, if not better Judges of men, are certainly better Judges of facts, better able to take a comprehensive view of a complicated subject. Juries, perplexed with the cause, and more perplexed with the arguments of counsel, and not seeing their way clear, often find for the defendant without investigating with accuracy the merits of the cause. He could see no reason for departing from the principle laid down in Southall v. M’Keand,(b) where the Court say, “that the verdict in the District Court ought not to stand, upon the certificate of the Judges, that the weight of evidence was against it: since it is unusual for the Chancellor to be satisfied with such a verdict.” This decision applies as emphatically to a case after the second verdict as the first.
Curia advisare vult.
Thursday, November 19. The Judges delivered their opinions.
JUDGE TUCKER.
The history of the occasion and progress of this suit is given in 2 Wash. Rep. 80. Since that period, there have been two new trials — 'One at Charlottesville, where the cause of action, if any, arose: the other at Richmond, eighty miles distant from the scene. In both, the Jury found verdicts for the defendant at law: but, before either of their verdicts were rendered, a Jury had been impanelled three days, without being able to agree, and were finally discharged. The Judges before whom the trials were had, certified, in the first instance, that, upon the whole, in the opinion of the Court, the evidence on the part of the plaintiff outweighed that of the defendant; in the second instance, the Judges’ certificate declares that, no evidence was introduced in addition to that conlained in the record now before us, and that, in their opinion, the «'verdict was contrary to evidence. This has imposed upon this Court the necessity of inspecting that evidence. There is a prodigious mass on both sides, which it is impossible for me to reconcile; such is the opposition between the evidence for the parties respectively. Ignorant of the characters of all the witnesses, (which were perhaps known to the jurors,) I know not whom I ought most to credit or discredit. I must therefore confide in the opinion of the Jury, who are the constitutional judges in such cases. More than twenty years have elapsed since this suit was instituted; and fifteen years passed over before the plaintiff was confident enough in the justice of his claim to assert it in a Court of haw, although all that time in possession of the fatal ticket, which has been the apple of discord for eight and thirty years. I think it high time to say —Interest Reipublicas ut sit finis litium; and therefore am for affirming the decree whereby the plaintiff’s judgment hath been perpetually enjoined.
JUDGE ROANE-
Upon the principles which seem to have governed the Court in the case of Ross v. Pines, (c) I am of the same opinion. The concurring verdicts of the two Juries ought to conclude this matter. The first Jury was probably acquainted with the characters and credibility of the witnesses; and the last Jury were probably a stranger to them all; yet both have reprobated the plaintiff’s pretensions.
Juries are certainly the best judges of credibility; and, as was said by this Court in the case of Ross v. Pines, it would be vain to resort to the verdict of a Jury, if their verdicts were perpetually to be set aside, until they corresponded with the opinions of the Courts before which they are taken: — 'then it would be the opinion of the Court, and not of the Jury, which would govern the decision of the Chancellor. In further corroboration of my opinion in this instance, I will mention that, in the former decision of this case by this Court, one Judge seems to have expressed no opinion as to the extent of the appellant’s right; another said, that, at most, it was only to one-fourth; and the President said his impressions were that the appellant had no title. On the ground therefore of these opinions, in addition to the two concurring verdicts, I think that the decree of the Chancellor should be affirmed.
«JUDGE ELEMING.
This is precisely the case that was before this Court at the October Term, 1795, reported in 2 Wash. p. 80; with this only difference, that the deposition of Miily Oglesby, which I think not material, was read on the first *246 trial of the issue, but was not in the record exhibited to this Court. There has been a second trial of the issue ordered by the Court of Chancery, and the verdict again in favour of the appellee, with both of which I am perfectly satisfied, whatever may have been the impressions of the Courts before which those issues were tried.
I think it high time the parties were at rest, as it is now thirty-eight years since the origin of the controversy; during fifteen of which, the appellant’s testator, though living in the County, quietly acquiesced in the possession of Roderick M’Rae, and of those who claimed under him, before he asserted his claim to the premises in a Court of Justice. I therefore concur in the opinion that the decree making the injunction ,of Woods perpetual is correct, and ought to be affirmed.
Decree of the Court of Chancery affirmed, by the unanimous opinion of the Judges.

 1 Wash. 336, Southall v. M’Keand, &c.

 3 Call. 568. Ross v. Pines.

<b) 1 wash. 336.

 3 Call, 668.